# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
07/24/2012
CT Log Number 520916619

TO: Daniel Zaccardo
Accretive Health
401 N. Michigan Ave., Suite 2700
Chicago, IL 60611

RE: **Process Served in Illinois**

FOR: Accretive Health, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert Haith, etc., Pltf. vs. Edgar M. Bronfman, et al., Dfts. and Accretive Health, Inc., Nominal Dft. |
| **DOCUMENT(S) SERVED:** | Summonses, Cover Sheet, Jury Demand, Appearance, Verified Complaint, Verification, Affidavit |
| **COURT/AGENCY:** | Cook County Circuit Court - County Department - Chancery Division, IL Case # 12CH27968 |
| **NATURE OF ACTION:** | Breach of Fiduciary Duties - Failing to Maintain Internal Controls, etc. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/24/2012 at 11:00 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, not counting the day of service |
| **ATTORNEY(S) / SENDER(S):** | James T. Crotty<br>James T. Crotty & Associates<br>3S126 Park Blvd<br>Glen Ellyn, IL 60137<br>312-623-1599 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 793826959450<br>Email Notification, Daniel Zaccardo dzaccardo@accretivehealth.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | C T Corporation System<br>Thad DiBartelo<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **TELEPHONE:** | 312-345-4336 |

Page 1 of 1 / FR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |



*00750080*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____CHANCERY_____ DIVISION

12 C H 27 9 6 8

No. _____

ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC.
                                        **(Name all parties)**

        v.

EDGAR M. BRONFMAN, et al.

## ☒ SUMMONS ☐ ALIAS SUMMONS

**To each Defendant:** ACCRETIVE HEALTH, INC., c/o C T Corporation System, 208 S. LaSalle St., 17th Floor, Chicago, IL 60604

   **YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

   ☒ **Richard J. Daley Center, 50 W. Washington, Room ___802___, Chicago, Illinois 60602**

| ☐ **District 2 - Skokie** | ☐ **District 3 - Rolling Meadows** | ☐ **District 4 - Maywood** |
|---|---|---|
| 5600 Old Orchard Rd. | 2121 Euclid | 1500 Maybrook Ave. |
| Skokie, IL 60077 | Rolling Meadows, IL 60008 | Maywood, IL 60153 |
| ☐ **District 5 - Bridgeview** | ☐ **District 6 - Markham** | ☐ **Child Support** |
| 10220 S. 76th Ave. | 16501 S. Kedzie Pkwy. | 28 North Clark St., Room 200 |
| Bridgeview, IL 60455 | Markham, IL 60428 | Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

   This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: ___30588___

Name: JAMES T. CROTTY & ASSOCIATES

Atty. for: PLAINTIFF

Address: 3S126 PARK BLVD.

City/State/Zip: GLEN ELLYN, IL 60137

Telephone: 312-623-1599

WITNESS, _____, _____

~~DOROTHY BROWN~~ JUL 23 2012
                        **Clerk of Court**

Date of service: _____, _____
         (To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

         (Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |



*00750080*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____CHANCERY_____ DIVISION

No. 12 CH 27968

ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC.

**(Name all parties)**

v.

EDGAR M. BRONFMAN, et al.

## ☒ SUMMONS ☐ ALIAS SUMMONS

**To each Defendant:** ACCRETIVE HEALTH, INC., c/o C T Corporation System, 208 S. LaSalle St., 17th Floor, Chicago, IL 60604

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☒ Richard J. Daley Center, 50 W. Washington, Room _____802_____, Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60428

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: _____30588_____

Name: JAMES T. CROTTY & ASSOCIATES

Atty. for: PLAINTIFF

Address: 3S126 PARK BLVD.

City/State/Zip: GLEN ELLYN, IL 60137

Telephone: 312-623-1599

WITNESS, _____, _____

DOROTHY BROWN JUL 2 3 2012

**Clerk of Court**

Date of service: _____, _____
(To be inserted by officer on copy left with defendant
or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Chancery Division Civil Cover Sheet - General Chancery Section     (Rev. 6/15/09) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC.

_____
                                          **Plaintiff**

                v.

EDGAR M. BRONFMAN, et al.

_____
                                    **Defendant**

No. **12CH27968**

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

    A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the line in front of the appropriate category which best characterizes your action being filed.

0005_____    **Administrative Review**

0001_____    **Class Action**

0002_____    **Declaratory Judgment**

0004_____    **Injunction**

0007_____    **General Chancery**

0010_____    **Accounting**                           0019_____    **Partition**

0011_____    **Arbitration**                           0020_____    **Quiet Title**

0012_____    **Certiorari**                             0021_____    **Quo Warranto**

0013_____    **Dissolution of Corporation**      0022_____    **Redemption Rights**

0014_____    **Dissolution of Partnership**       0023_____    **Reformation of a Contract**

0015_____    **Equitable Lien**                     0024_____    **Rescission of a Contract**

0016_____    **Interpleader**                       0025_____    **Specific Performance**

0017_____    **Mandamus**                       0026_____    **Trust Construction**

0018_____    **Ne Exeat**                         _X_    **Other (specify)**   Shareholder Derivative

By: _____
                   **Attorney**                  **Pro Se**

Atty. No.: 30588

Name: JAMES T. CROTTY & ASSOCIATES

Atty. for: PLAINTIFF

Address: 3S126 PARK BLVD.

City/State/Zip: GLEN ELLYN, IL 60137

Telephone: 312-623-1599

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED 2012 JUL 23 AM 9:59 CIRCUIT COURT OF COOK COUNTY ILLINOIS CHANCERY

1910 - No Fee Paid
1919 - Fee Paid
Jury Demand                         CCG N067-10M-6/09/04 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - CHANCERY DIVISION

ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC.

v.

EDGAR M. BRONFMAN, et al.

12 C H 27 9 6 8

No. _____

## JURY DEMAND

The undersigned demands a jury trial.



JAMES T. CROTTY & ASSOCIATES
Attorneys for Plaintiff

By: _James T. Crotty_  (Signature)

Dated: _____ JULY 23 _____, 2012

Atty. No.:  30588
Name:  JAMES T. CROTTY & ASSOCIATES
Atty. for:  PLAINTIFF
Address:  3S126 PARK BLVD.
City/State/Zip:  GLEN ELLYN, IL  60137
Telephone:  312-623-1599

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(This form replaces CCM 0009)                    CCG N009-200M-6/5/03(                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

### COUNTY DEPARTMENT - CHANCERY DIVISION

12CH27968

ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC.
_____ **Plaintiff**

v.

EDGAR M. BRONFMAN, J. MICHAEL CLINE, et al.,
_____ **Defendant**

No. _____

Claimed $: IN EXCESS OF $50,000

Return Date: _____

Court Date: _____

Room No.: _____

50 W. WASHINGTON ST., CHICAGO, IL 60602
**Address of Court District for Filing**

## APPEARANCE AND JURY DEMAND*

☒ **General Appearance**        ☐ 0900 - Fee Paid        ☒ 0909 - No Fee
                                ☐ 0904 - Fee Waived      ☐ 0908 - Trial Lawyers Appearance - No Fee

☒ **Jury Demand***              ☒ 1900 - Appearance and Jury Demand/Fee Paid
                                ☐ 1909 - Appearance and Jury Demand/No Fee Paid

The undersigned enters the appearance of:    ☒ **Plaintiff**    ☐ **Defendant**

ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC.
_____
(Insert Litigant's Name)

_____
                                    **Signature**

☒ **Initial Counsel of Record**    ☐ **Pro Se (Self-represented)**
☐ **Additional Appearance**        ☐ **Substitute Appearance**

☒ **ATTORNEY NO.:**    30588        ☐ **PRO SE:** 99500

(Please complete the following contact information.)

Name:  JAMES T. CROTTY & ASSOCIATES

Atty. for:  PLAINTIFF

Address:  3S126 PARK BLVD.

City/State/Zip:  GLEN ELLYN, IL 60137

Telephone:  312-623-1599

*Strike demand for trial by jury if not applicable.

┌─────────────────────────────────────────┐
│              *Important*                  │
│                                           │
│ *Once this Appearance form is filed, photocopies of* │
│ *this form must be sent to all other parties named* │
│ *in this case (or to their attorneys) using either regular* │
│ *mail, facsimile transmission (fax) or personal* │
│ *delivery. (See Illinois Supreme Court Rules 11 and* │
│ *13 for more information.)*                │
└─────────────────────────────────────────┘

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

_____
                                **Attorney for Plaintiff**

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CIRCUIT COURT COOK COUNTY ILLINOIS
CHANCERY DIVISION

|  |  |
|---|---|
| ROBERT HAITH, derivatively on behalf of ACCRETIVE HEALTH, INC. <br><br> Plaintiff, <br><br> v. <br><br> EDGAR M. BRONFMAN, J. MICHAEL CLINE, STEVEN N. KAPLAN, STANLEY N. LOGAN, DENIS J. NAYDEN, ARTHUR H. SPIEGEL III, MARY A. TOLAN, JOHN T. STATON AND MARK A. WOLFSON, <br><br> Defendants, <br><br> and <br><br> ACCRETIVE HEALTH, INC., <br><br> Nominal Defendant. | Civil Action No. 12CH27968 <br><br><br> **JURY TRIAL DEMANDED** |



## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Robert Haith ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint").

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought for the benefit of Accretive Health, Inc. ("Accretive Health" or the "Company") against certain current and former members of its Board of Directors (the "Board") and executive officers seeking to remedy Defendants' (defined below) breaches of fiduciary duties and other misconduct from March 2, 2011 to the present (the "Relevant Period") that have caused substantial losses and other damages to the Company, as further described in detail herein.

2.     Accretive Health purports to be a leading provider of services that help healthcare providers generate sustainable improvements in their operating margins and healthcare quality while also improving patient, physician, and staff satisfaction. The Company's revenue cycle management service offering helps U.S. healthcare providers more efficiently manage their revenue cycles, which encompass patient registration, insurance and benefit verification, medical treatment documentation and coding, bill preparation, and collections. Accretive Health's physician advisory services offering helps hospitals navigate the path to compliant revenue by appropriately classifying a hospital visit as an in-patient or observation case for billing purposes.

3.     During the Relevant Period, Defendants issued materially false and misleading statements regarding the Company's new Quality and Total Costs of Care service initiative. Specifically, the Company failed to disclose that it was violating health privacy laws, state debt collective laws, and state protection laws.

4.     On March 29, 2012, the Company announced that in response to a lawsuit filed by Minnesota's Attorney General, the Company had agreed to no longer collect debts on behalf of Fairview Health Services ("Fairview") and would transition management of those operations to Fairview. Accretive Health further announced that it expected this change to negatively impact its fiscal year 2012 revenue by $62 million to $68 million, or approximately 6% of the Company's expected 2012 revenue.

5.     On this news, Accretive Health's stock dropped $4.46 per share to close at $19.60 per share on March 29, 2012, a one-day decline of nearly 19%.

6.     Then, on April 24, 2012, the Minnesota Attorney General released a report that highlighted overly aggressive practices used by Accretive Health, including demanding payment from people seeking care in emergency rooms, cancer wards, and delivery rooms.

7.     Because of this news, Accretive Health's stock plummeted $7.63 per share to close at $10.86 per share on April 25, 2012, a one-day decline of 41%.

8.     The truth, which was known by the Defendants but concealed from the investing public during the Relevant Period, was as follows:

a)     The Company violated and continued to violate privacy standards under the Health Insurance Portability and Accountability Act ("HIPAA") and the Health Information Technology for Economic and Clinical Health ("HITECH") Act by, among other things: (i) failing to provide appropriate safeguards to prevent the misuse or disclosure of protected health information; (ii) failing to keep all protected health information strictly confidential; and (iii) failing to develop, implement, maintain and use appropriate technical and physical safeguards to preserve the integrity, confidentiality and availability of protected health information and to prevent non-permitted use or disclosure of the information.

b)     The Company failed to encrypt protected patient health information.

c)     The Company was violating Minnesota state debt collection laws by, among other things, failing to provide patients with required disclosures identifying itself as a debt collection agency.

d)     The Company was violating Minnesota consumer protection laws by, among other things, failing to disclose to patients its extensive involvement in their healthcare, including the extent of the Company's access to data and the manner in which it utilizes such data.

e)     The effect the Company's violations of health privacy laws, state debt collection laws, and state consumer protection laws would have on its future earnings and on its relationship with Fairview.

f)     Based upon the above, Defendants lacked a reasonable basis for their positive statements about the Company or its revenue outlook.

9.     Defendants' conduct here is the very definition of extreme recklessness and gross negligence, which has resulted in massive damages for Accretive Health and its stockholders. Defendants have also exposed the Company to losses and damages, including civil liability, because of a securities fraud class action suit (the "Securities Class Action") pending against the Company and certain of its senior executive officers.  The damages to the Company include, among other things, investigatory and litigation costs, including those costs for defending the Company in the Securities Class Action and other regulatory actions.

10.     Plaintiff brings this derivative action to: a) recover damages against the Defendants for the benefit of the Company; and b) to require the Company to reform and improve its corporate governance and internal procedures to protect Accretive Health and its shareholders from a repetition of the damaging events described below.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over the subject matter of this action because the amount in controversy exceeds the minimum required to invoke the jurisdiction of this Court, and because this Court has the power to grant the relief requested by Plaintiff.

12.     Venue is proper because Nominal Defendant Accretive Health maintains its principal place of business in this County and many of the Defendants' wrongful acts complained of herein arose in and emanated from said County.  All of the Defendants have substantial and ongoing contact with Illinois and/or reside in Illinois.  Additionally, Defendants conduct substantial business activity in this County.

## THE PARTIES

**Plaintiff**

13.     Plaintiff is a current shareholder of Accretive Health and has continuously held Accretive Health stock at relevant times.

**Nominal Defendant**

14.     Nominal Defendant Accretive Health provides revenue cycle management services for hospitals and healthcare providers in the United States.     Accretive Health is incorporated in Delaware and maintains its principal executive offices at 401 North Michigan Avenue, Suite 2700, Chicago, Illinois 60611.

**The Individual Defendants**

15.     Defendant Edgar M. Bronfman, Jr. ("Bronfman") has served as a director since October 2006.  He is a member of the Compensation Committee and serves as Chairman of the Nominating and Corporate Governance Committee.[1]

16.     Defendant J. Michael Cline ("Cline") is a founder of the Company and has served as a director since August 2003.  Cline has served as Chairman of the Board since July 2009.  Cline is a member of the Compensation and Nominating and Corporate Governance Committees.

17.     Defendant Steven N. Kaplan ("Kaplan") has served as a director since July 2004.  Kaplan is a member of the Audit and Nominating and Corporate Governance Committees.  Kaplan serves as Chairman of the Compensation Committee.

---

[1] On January 21, 2011, the Trial Court in Paris found Bronfman guilty of criminal charges of insider trading during the time that Bronfman served as vice chairman of Vivendi Universal ("Vivendi") from 2000-2003. Specifically, the Trial Court found that Bronfman illegally gained $12.8 million from exercising his Vivendi stock options based on non-public information about a planned sale.  Bronfman was also given a fifteen (15) month suspended sentence and fined $6.7 million.

18.     Defendant Stanley N. Logan ("Logan") has served as a director since April 2011. Logan serves as the Chairman of the Audit Committee.

19.     Defendant Denis J. Nayden ("Nayden") has served as a director since October 2003 and as a Co-Chairman of the board until July 2009.   Nayden is a member of the Compensation Committee.

20.     Defendant Arthur H. Spiegel, III ("Spiegel") has served as a director since October 2003 and served as Co-Chairman of the Board until July 2009.  Spiegel is a member of the Compensation Committee.

21.     Defendant Mary A. Tolan ("Tolan") is a founder of the Company and has served as President, Chief Executive Officer ("CEO") and a director since November 2003.

22.     Defendant John T. Staton ("Staton") is the Company's Chief Financial Officer.

23.     Defendant Mark A. Wolfson ("Wolfson") has served as a directors since October 2003.  Wolfson is a member of the Audit Committee.

24.     Collectively, Bronfman, Cline, Staton, Kaplan, Logan, Nayden, Spiegel, Tolan, and Wolfson shall be referred to herein as "Defendants" or the "Individual Defendants."

## DEFENDANTS' DUTIES

**Fiduciary Duties of Defendants**

25.     By reason of their positions as officers, directors, and/or fiduciaries of Accretive Health and because of their ability to control the business and corporate affairs of Accretive Health, Defendants owed Accretive Health and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Accretive Health in a fair, just, honest and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Accretive Health and its shareholders to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each

director and officer of the Company owes to Accretive Health and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26.     Defendants, because of their positions of control and authority as directors and/or officers of Accretive Health, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Accretive Health, each of the Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

27.     To discharge their duties, the officers and directors of Accretive Health were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Accretive Health were required to, among other things:

    i.    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    ii.    Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

    iii.    When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**Accretive Health's Corporate Governance Guidelines**

28.     The Board has adopted a set of Corporate Governance Guidelines ("Governance Guidelines") to assist it in the exercise of its responsibilities.

29.     According to the Governance Guidelines, the principal responsibility of the Board is to oversee the management of the Company, which includes, reviewing and approving fundamental operating, financial and other corporate plans, strategies and objectives and providing advice and assistance to the Company's senior executives.

30.     The Governance Guidelines state that directors have an obligation to become and remain informed about the Company and its business, including the following:

    i.    The principal operational and financial objections, strategies, and plans of the Company.

    ii.    The results of operations and financial condition of the Company and of significant subsidiaries and business segments.

    iii.    The relative standing of the business segments both within the Company and as compared to competitors.

    iv.    The factors that determine the Company's success.

    v.    The risks and problems that affect the Company's business and prospects.

31.     The directors are responsible for determining that effective systems are in place for reporting to the Board on important matters concerning the Company, which include, future business prospects and forecasts and governmental and regulatory matters.

32.     In carrying out their duties, the Board has unfettered access to the Company's officers and employees in order to ensure that directors can ask all questions and ascertain all information necessary to fulfill their duties.

33.     The Governance Guidelines also allows the Board and each committee to hire and consult with independent legal financial or other advisors, as they deem necessary, without consulting or obtaining the approval of any officer of the Company in advance.

## SUBSTANTIVE ALLEGATIONS

34.     Accretive Health was originated by the principals of Accretive, LLC, a New York private equity fund, in 2003. Accretive Health provides a technology-infused complete outsourcing solution for the billing departments of large hospital systems and physician groups. The Company initially charges the client a base fee that is equal to what the organization was originally spending on its billing department. As Accretive Health is able to reduce leverage by increasing revenue and reducing costs, 25% of the savings are passed along to the client and the remainder is passed onto Accretive Health through incentive payments. In 2009, three affiliates of Accretive, LLC were shut down due to their disreputable collections activity.

35.     Fairview is a $2.8 billion healthcare system based in Minnesota. It is one of Accretive Health's larger clients. For 2010 and 2011, Fairview accounted for 10.7% and 12.2% of Accretive Health's total net services revenue, respectively.

36.     In mid-2010, Accretive Health launched its new Quality and Total Cost of Care initiative. The Company marketed this product as being an end-to-end solution capable of reducing medical costs and improving quality of care for healthcare facilities. In November 2010, Accretive Health entered into a five-year agreement with Fairview for its Quality and Total Cost of Care platform. Under this contract, the Company helped Fairview negotiate contracts with HMOs and insurance companies through which the hospital receives incentive pay to cut patient costs. Accretive Health then receives a share of the hospital's incentive pay.

37.     On March 2, 2011, Defendants caused the Company to issue a press release announcing its fourth quarter and fiscal year 2010 financial results. The Company reported net income of $5.5 million, or $0.06 diluted EPS and net services revenue of $170.0 million for the fourth quarter of 2010. Additionally, the Company reported net income of $12.6 million, or $0.13 diluted EPS and net services revenue of $606.3 million for fiscal year 2010. Further, the

Company reported its 2011 outlook, projecting net services revenue of $835 million to $850 million and diluted EPS of $0.31 to $0.33 for the year ended December 31, 2011. The press release stated in relevant part:

> Mary Tolan, Accretive Health's Co-Founder and Chief Executive Officer said, "We continue to grow our revenue cycle management business with new client additions and strong value creation for these clients and the company. The strength of our market presence continued to expand as evidenced by a pipeline of opportunities that is the strongest the company has ever seen. Since the public offering in 2010, we have more potential customers reaching out to learn about our offering and the value it can deliver for their organization. Our clients continued to adopt our Shared Services offering, further validating the strength of our customer partnerships. We expanded our already sizable market opportunity with the launch of our new and innovative Quality and Total Cost of Care offering with our inaugural customer Fairview Health Services. The Quality and Total Cost of Care offering, only a few months into implementation, is delivering results in line with our expectations on key quality and total cost of care metrics."
>
> "Looking ahead, we believe we are poised for strong growth and profitability in 2011 and beyond. Our new business pipeline is robust and we are encouraged by the high level of engagement we encounter when meeting with provider CEOs and CFOs. The significant revenue cycle sales campaigns we discussed last quarter are progressing well. We are also excited about the early opportunities we are seeing in our new Quality and Total Cost of Care business, where we are in active contract negotiations with two potential clients. In the coming years, we expect to benefit from continued growth in our revenue cycle management business, including a growing contribution from incentive payments as our contracts mature, and from new contracts in our Quality and Total Cost of Care offering."

38. On March 18, 2011, Defendants caused the Company to file a false and misleading Form 10-K with the SEC for the year ended December 31, 2010. Defendants Tolan, Staton, Cline, Bronfman, Kaplan, Nayden, Spiegel and Wolfson each signed the From 10-K. It stated in relevant part as follows:

> We provide our revenue cycle and quality and total cost of care service offerings pursuant to managed service contracts with our customers. In rendering our services, we must comply with customer policies and procedures regarding charity care, personnel, compliance and risk management as well as applicable federal, state and local laws and regulations.
>
> *       *       *

Data and information regarding our customers' patients is encrypted when transmitted over the internet or traveling off-site on portable media such as laptops or backup tapes.

\*　　　\*　　　\*

The customers we serve are subject to a complex array of federal and state laws and regulations. These laws and regulations may change rapidly, and it is frequently unclear how they apply to our business. We devote significant efforts, through training of personnel and monitoring, to establish and maintain compliance with all regulatory requirements that we believe are applicable to our business and the services we offer.

39.     On or about March 24, 2011, Accretive Health conducted a public offering on behalf of certain principal and selling stockholders, selling 7.5 million shares of Accretive Health common stock to the public at $23.50 per share, raising nearly $153 million in gross proceeds. The selling shareholders consisted mainly of officers or directors of the Company or entities related to the officers and directors. Specifically, Defendant Tolan sold 750,000 shares of Accretive Health common stock for gross proceeds of $17.6 million; Defendant Staton sold 82,175 shares of Accretive Health common stock for gross proceeds of $1.9 million; and Defendant Cline sold nearly 2 million shares of Accretive Health common stock for gross proceeds of $46 million.

40.     On May 11, 2011, Defendants caused the Company to issue a press release announcing its first quarter 2011 financial results. The Company reported net income of $0.2 million, or $0.00 diluted EPS and net services revenue of $163.7 million for the first quarter of 2011. Further, the Company reiterated its 2011 projections of net services revenue of $835 million to $850 million. The press release stated in relevant part:

Tolan, Accretive Health's Co-Founder and Chief Executive Officer said, "We had a very productive first quarter and delivered results right in line with our expectations. Despite it being our seasonally slowest quarter, we experienced strong top-line growth, margin expansion and increasing profitability. These results are driven by the high level of value we deliver to our customers through both net revenue yield improvements and operating efficiencies.

We continued to grow our revenue cycle management business by adding new customers and further penetrating our existing customer healthcare systems. We are seeing strong interest from existing customers in our Shared Services offering, further validating the strength of our customer partnerships. We've made solid progress in our Quality and Total Cost of Care service offering. Our results with Fairview Health Services are exceeding our initial expectations and they have been a gracious host for our prospective customers who are exploring this offering. The strong demand we are seeing in our Quality and Total Cost of Care business will allow us to thoughtfully select our customers beyond Fairview. Based on our robust pipeline of opportunities across our business, we are confident that we will exceed $900 million in Projected Contracted Annual Revenue Run Rate at December 31, 2011.

41.     On August 1, 2011, Accretive Health's stock reached a high of $30.80 per share.

42.     On August 10, 2011, Defendants caused the Company to issue a press release announcing its second quarter 2011 financial results. The Company reported net income of $8.6 million, or $0.08 diluted EPS and net services revenue of $183.6 million for the third quarter of 2011. The Company further confirmed its 2011 guidance, with net services revenue of $835 million to $850 million. The press release stated in relevant part:

Mary Tolan, Accretive Health's Founder and Chief Executive Officer, said, "We are very pleased by the continuing momentum as demonstrated by our strong Projected Contracted Annual Revenue Run-Rate which at the midpoint increased by $119 million since our last earnings call. This addition to our PCARR is more than double the dollar amount of PCARR added between our fourth quarter 2010 and first quarter 2011 earnings calls. These additions produced a 41% year over year increase in PCARR. While our PCARR to date is exceeding our expectations, we recognize that the exact timing of contract signings can have a disproportionate impact on revenue in any single quarter. We continue to be positive about our annual revenue expectations and remain confident that the full year revenues will be within our guidance range. In addition, we believe we are managing our business well and our 2011 adjusted EBITDA is tracking to our annual plan."

"Our five-year exclusive revenue cycle management agreement with the Beaumont Health System further validates the success of our differentiated RCM outsourcing solution. Further this agreement brings Accretive Health's market share of acute care hospital volume to 65% of the Detroit market. We believe this leadership position demonstrates the potential that can be replicated in our other markets as they mature."

43.     On November 9, 2011, Defendants caused the Company to issue a press release announcing its third quarter 2011 financial results. The Company reported net income of $7.3 million, or $0.07 diluted EPS and net services revenue of $218.9 million for the third quarter of 2011. Additionally, the Company provided an updated fiscal year 2011 outlook, forecasting net services revenue of $820 million to $835 million. The press release stated in relevant part:

> Mary Tolan, Accretive Health's Founder and Chief Executive Officer, said, "I'm pleased to report that as of today our Projected Contracted Annual Revenue Run-Rate is in the range of $960 million to $990 million, up $313 million, or 47% year-over-year at the midpoint of the range. This is the largest absolute dollar gain in PCARR in our operating history, and underscores that demand for our services remains strong and that the investments we have made in our people and sales capabilities are yielding significant results.
>
> "Our recently announced revenue cycle strategic collaboration with Intermountain Healthcare validates our market position as the partner of leading healthcare systems with strong track records of clinical and operational excellence. More importantly, this agreement places us at the forefront of innovation with the creation of our Center of Excellence in the West, which will serve as a training, research and development vehicle for the benefit of the industry. Finally, we expect this strategic collaboration to increase our penetration in the West, a market where we see great opportunity for future growth.
>
> "In our Quality and Total Cost of Care business, we continue to deliver significant improvements in key operating metrics beyond our initial expectations. We are also working on intra-stay quality enhancement, which we believe has applicability to all hospitals, regardless of whether they have population health contracts. Finally, our Physician Advisory Services business continues to grow at a rapid pace as hospitals face increased regulatory pressures and intensifying recovery audits."

44.     On January 19, 2012, Minnesota's Attorney General filed a lawsuit against Accretive Health[2] alleging that the Company had violated health privacy laws, state debt collection laws and state consumer protection laws.

---

[2] *See, State of Minnesota, by its Attorney General Lori Swanson, v. Accretive Health, Inc.*, Case No. 12-cv-00145.

45.   The Attorney General's lawsuit against the Company centers on a medical privacy security breach that occurred in July 2011.  According to the complaint, an employee of Accretive Health had a laptop stolen out of a rental car.  The laptop contained unencrypted medical records of at least 23,531 patients, in contrast to the Company's policy as set out in its SEC filings which states that "[d]ata and information regarding our customers' patients is encrypted when transmitted over the internet or traveling off-site on portable media such as laptops or backup tapes."  In addition to the medical data that was disclosed, personal identifying information about the patient, including the patient's name, address, phone number and Social Security number was also disclosed.  The Attorney General's office was not only concerned with the theft itself and how the Company subsequently handled it but also with the extent of the confidential medical information that Accretive Health had within its possession and the use of that information.

46.   Thereafter, on February 3, 2012, the Minnesota Department of Commerce temporarily suspended Accretive Health's debt collection license in the state of Minnesota.

47.   Despite the Attorney General's lawsuit exposing the Company to massive damages, Accretive Health downplayed the truth of the factual allegations contained in the complaint or the effect it would have on the Company's future earnings or the Company's relationship with Fairview.

48.   On February 29, 2012, Defendants caused the Company to issue a press release announcing its fourth quarter and full year 2011 financial results.  The Company reported net income of $13.2 million, or $0.13 diluted EPS and net services revenue of $260 million for the fourth quarter of 2011.  Additionally, the Company reported net income of $29.2 million, or $0.29 diluted EPS and net services revenue of $826 million for the full year 2011.  Further, the

Company provided its fiscal year 2012 guidance of net services revenue of $1.09 billion to $1.12

billion for 2012. The press release stated in relevant part:

> Mary Tolan, Accretive Health's Founder and Chief Executive Officer, said, "2011 was a banner year for Accretive Health. As we achieved strong financial results, we assisted our customers in delivering on their own missions to more efficiently manage their revenue cycle operations, improve their quality of care and reduce overall healthcare costs.

> "We are proud that our proven business model helps lower the overall financial burden of healthcare while simultaneously improving the quality of care. These are among the most pressing healthcare issues today. Looking ahead, we have a very strong foundation to execute against our long-term goals. We plan to continue to make strategic investments to establish Accretive Health as the leader in delivering value to our customers through innovation, efficiency and high quality-of-care outcomes."

49.    On March 29, 2012, Accretive Health filed a Form 8-K with the SEC, announcing

that, in response to the lawsuit filed by Minnesota's Attorney General, the Company had agreed

to no longer collect debts on behalf of Fairview and would transition management of those

operations to Fairview. Accretive Health further announced that it expected this change to

negatively impact its fiscal year 2012 revenue by $62 million to $68 million. The Form 8-K

stated in relevant part:

> **Item 8.01. Other Events.**

> Accretive Health announced today that in an ongoing effort to resolve its outstanding issues with the Minnesota Attorney General, Accretive Health and Fairview Health Services have decided to amend their revenue cycle operations agreement to transition the management of those operations to Fairview leadership. The company is currently working with Fairview on transition plans. Accretive Health and Fairview will continue their work together on their Quality and Total Cost of Care initiative for population health management.

> ***Accretive Health expects the revenue impact of the new revenue cycle operations arrangement with Fairview to be in the range of $62 million to $68 million***, or approximately 6% of the company's expected 2012 revenue. Accretive Health is working to offset the majority of this revenue shortfall with work from new and existing customers. If the company is unable to do so, the new Fairview arrangement will adversely affect Accretive Health's fiscal year

2012 guidance. The company will provide an update on its financial metrics and 2012 guidance on its quarterly earnings call on May 9th.

[Emphasis added.]

50.     On this news, Accretive Health's stock dropped $4.46 per share to close at $19.60 per share on March 29, 2012, a one-day decline of nearly 19%.

51.     Then, on April 24, 2012, the Minnesota Attorney General released a report that highlighted aggressive and unsavory tactics used by Accretive Health to squeeze payments from patients, including demanding payment from people seeking care in emergency rooms, cancer wards, and delivery rooms. The report raised concerns that such practices have become common at hospitals across the country.

52.     According to a *New York Times* article entitled "Debt Collector Is Faulted for Tough Tactics in Hospitals":

Hospital patients waiting in an emergency room or convalescing after surgery are being confronted by an unexpected visitor: a debt collector at bedside.

This and other aggressive tactics by one of the nation's largest collectors of medical debts, Accretive Health, were revealed on Tuesday by the Minnesota attorney general, raising concerns that such practices have become common at hospitals across the country.

The tactics, like embedding debt collectors as employees in emergency rooms and demanding that patients pay before receiving treatment, were outlined in hundreds of company documents released by the attorney general. And they cast a spotlight on the increasingly desperate strategies among hospitals to recoup payments as their unpaid debts mount.

To patients, the debt collectors may look indistinguishable from hospital employees, may demand they pay outstanding bills and may discourage them from seeking emergency care at all, even using scripts like those in collection boiler rooms, according to the documents and employees interviewed by The New York Times.

In some cases, the company's workers had access to health information while persuading patients to pay overdue bills, possibly in violation of federal privacy laws, the documents indicate.

The attorney general, Lori Swanson, also said that Accretive employees may have broken the law by not clearly identifying themselves as debt collectors.

*       *       *

"I have every reason to believe that what they are doing in Minnesota is simply company practice," Ms. Swanson said in an interview, but declined to provide details.

*       *       *

Accretive says that it trains its staff to focus on getting payment through "revenue cycle operations." Accretive fostered a pressurized collection environment that included mandatory daily meetings at the hospitals in Minnesota, according to employees and the newly released documents. Employees with high collection tallies were rewarded with gift cards. Those who fell behind were threatened with termination.

"We've started firing people that aren't getting with the program," a member of Accretive's staff wrote in an e-mail to his bosses in September 2010.

Collection activities extended from obstetrics to the emergency room. In July 2010, an Accretive manager told staff members at Fairview that they should "get cracking on labor and delivery," since there is a "good chunk to be collected there," according to company e-mails.

Employees were told to stall patients entering the emergency room until they had agreed to pay a previous balance, according to the documents. Employees in the emergency room, for example, were told to ask incoming patients first for a credit card payment. If that failed, employees were told to say, "If you have your checkbook in your car I will be happy to wait for you," internal documents show.

Employees at Accretive's client hospitals ask patients to make "point of service" payments before they receive treatment. Until she went to Fairview for her son Maxx's ear tube surgery in November, Marcia Newton, a stay-at-home mother in Corcoran, Minn., said she had never been asked to pay for care before receiving it. "They were really aggressive about getting that money upfront," she said in an interview.

Ms. Newton was shocked to learn that the employees were debt collectors. "You really feel hoodwinked," she said.

While hospital collections at Fairview increased, patient care suffered, the employees said. "Patients are harassed mercilessly," a hospital employee told Ms. Swanson.

Patients with outstanding balances were closely tracked by Accretive staff members, who listed them on "stop lists," internal documents show. In March

2011, doctors at Fairview complained that such strong-arm tactics were discouraging patients from seeking lifesaving treatments, but Accretive officials dismissed the complaints as "country club talk," the documents show.

Ms. Swanson said that the hounding of patients violated the Emergency Medical Treatment and Active Labor Act, a federal law requiring hospitals to provide emergency health care regardless of citizenship, legal status or ability to pay.

In the January lawsuit, Ms. Swanson said that by giving its collectors access to health records, Accretive violated the Health Insurance Portability and Accountability Act, known as Hipaa (pronounced HIP-ah). For example, an Accretive collection employee had access to records that showed a patient had bipolar disorder, Parkinson's disease and a host of other conditions.

In addition, she said, the company broke state collections laws by failing to identify themselves as debt collectors when dealing with patients.

53.    Because of this news, Accretive Health's stock plummeted $7.63 per share to close at $10.86 per share on April 25, 2012, a one-day decline of 41%.

54.    The true facts, which were known by the Defendants but concealed from the investing public during the Relevant Period, were as follows:

a)    The Company was violating privacy standards under HIPAA and the HITECH Act by, among other things: (i) failing to provide appropriate safeguards to prevent the misuse or disclosure of protected health information; (ii) failing to keep all protected health information strictly confidential; and (iii) failing to develop, implement, maintain and use appropriate technical and physical safeguards to preserve the integrity, confidentiality and availability of protected health information and to prevent non-permitted use or disclosure of the information.

b)    The Company failed to encrypt protected patient health information.

c)    The Company was violating the terms of its contract with Fairview by failing to limit access of protected health information to the persons or classes of persons in its

workforce who needed access to it in order to carry out their duties. In fact, Accretive Health made protected health information available to its debt collectors.

d)       The Company was violating Minnesota state debt collection laws by, among other things, failing to provide patients with required disclosures identifying itself as a debt collection agency.

e)       The Company was violating Minnesota consumer protection laws by, among other things, failing to disclose to patients its extensive involvement in their healthcare, including the extent of the Company's access to data and the manner in which it utilizes such data.

f)       The effect the Company's violations of health privacy laws, state debt collection laws and state consumer protection laws would have on its future earnings and on its relationship with Fairview.

g)       Based upon the above, Defendants lacked a reasonable basis for their positive statements about the Company or its revenue outlook.

55.       Because of the Individual Defendants' wrongful conduct, Accretive Health has expended and will continue to expend significant sums of money.  Such expenditures will include, but are not limited to:

a)       Costs incurred to carry out internal investigations, compliance with the Attorney General of Minnesota's investigation and resulting litigation against the Company, including fees paid to outside counsel and experts; and

b)       Costs and legal fees to defend against private investigations relating to the illegal and improper conduct alleged herein.

56.     In addition, the Company has suffered substantial damage to its goodwill, reputation, and credibility.

## DERIVATIVE AND DEMAND FUTILITY
## ALLEGATIONS FOR THE BOARD OF ACCRETIVE HEALTH

57.     Plaintiff brings this action derivatively in the right and for the benefit of Accretive Health to redress injuries suffered and to be suffered by Accretive Health because of the breaches of fiduciary duty by the Individual Defendants.

58.     Plaintiff will adequately and fairly represent the interests of Accretive Health and its shareholders in enforcing and prosecuting its rights.

59.     Because of the facts set forth herein, Plaintiff has not made a demand on the Accretive Health Board of Directors to institute this action against the Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

60.     Defendants who are currently the members of Accretive Health's Board are Defendants Bronfman, Cline, Kaplan, Logan, Nayden, Spiegel, Tolan, and Wolfson (the "Director Defendants")[3].

61.     The Director Defendants face a substantial likelihood of liability in this action because they caused Accretive Health to issue false and misleading statements. Because of their advisory, executive, managerial, and directorial positions with Accretive Health, each of the Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels. Furthermore, according to the Company's Governance Guidelines, the Board has all resources and authority necessary to

_____

[3] Non-defendant George P. Schultz has served as director emeritus of the Board since September 2011. He no longer has the powers or responsibilities of a director and is not entitled to vote on Company matters.

discharge its duties, including the authority to retain experts or consultants. In carrying out their duties, the Board has unfettered access to the Company's management and employees in order to ensure that directors can ask all questions and ascertain all information necessary to fulfill their duties. Despite the vast resources available to the Board, it failed in its duties.

62. The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation, proximately causing millions of dollars of losses for Accretive Health as its common stock traded at artificially inflated levels.

**Likelihood of Substantial Liability of the Audit Committee Defendants**

63. Director Defendants Kaplan, Logan, and Wolfson each serve on the Audit Committee of Accretive Health's Board. As such, they will take no action against one another or the other members of the Board of Directors or the other Individual Defendants because each member of this Committee breached important specific duties as Audit Committee members. Pursuant to the Company's Audit Committee Charter, the Audit Committee is responsible for assisting the Board in discharging its responsibilities relating to oversight of the integrity of the company's financial statements and compliance by the Company with legal and regulatory requirements. Specifically, the Audit Committee is responsible for, *inter alia*:

a) Coordinating the Board's oversight of the Company's internal control over financial reporting, disclosure controls and procedures; and

b) Discussing the Company's policies with respect to risk assessment and risk management, including guidelines and policies to govern the process by which the Company's exposure to risk is handled.

64. Clearly, the Audit Committee was directly responsible for overseeing and participating in Accretive Health's financial reporting process. Defendants Kaplan, Logan, and Wolfson breached their fiduciary duties of due care, loyalty, and good faith because the Audit Committee failed to provide accurate financial disclosures regarding the Company's Quality and Total Costs of Care service initiative to investors during the Relevant Period. Specifically, these Defendants reviewed and approved Accretive Health's press releases and SEC filings. The Audit Committee members either knew or should have known of these financial misrepresentations given their size, scope, and blatancy, yet they failed to prevent or correct the false and misleading issuances. Such conduct is not protected by the business judgment rule.

65. Because of the Audit Committee's failures, Defendants Kaplan, Logan, and Wolfson face a substantial likelihood of liability for breaches of fiduciary duties, making any demand upon them futile.

**Likelihood of Substantial Liability of the Nominating and Corporate Governance Committee Members**

66. As members of the Company's Nominating and Governance Committee, Director Defendants Bronfman, Cline, and Kaplan were responsible for developing and recommending a set of corporate governance guidelines, including making changes as necessary. These Defendants failed in developing appropriate governance guidelines and as a result, Accretive Health faces massive exposure due to Defendants' wrongdoing.

67. Furthermore, pursuant to its Charter, the Nominating and Governance Committee is and was responsible for, among other things:

a) developing and recommending to the Board a set of Corporate Governance Guidelines applicable to the Company; and

- 22 -

b)  reviewing and assessing the adequacy of the Company's Governance Guidelines and recommend any proposed changes to the Board for approval.

68.  Defendants Bronfman, Cline, and Kaplan were responsible to develop and recommend a set of corporate governance guidelines and recommend changes as necessary. These Defendants failed in developing appropriate governance guidelines and as a result, failed in developing appropriate governance guidelines to ensure the Company complied with privacy standards under HIPAA and the HITECH Act and various debt collection laws and consumer protection laws.  Thus, Defendants Bronfman, Cline, and Kaplan unable to independently consider a demand for derivative litigation, as they face substantial liability for their breaches of their fiduciary duties.

**Likelihood of Substantial Liability of the Compensation Committee**

69.  As members of the Compensation Committee, Director Defendants Bronfman, Cline, Kaplan, Nayden and Spiegel were responsible for determining the executive officers' salaries, bonuses and other compensation.  Pursuant to its Charter, the Compensation Committee is responsible for, among other things:

a)  Reviewing and approving corporate goals and objectives relevant to the compensation of the Company's CEO, evaluate the CEO's performance in light of those goals and objectives, and determine and approve the CEO's compensation.

70.  The Compensation Committee permitted the continued compensation payments to senior executives, including Defendant Tolan, which were based on results derived from the Company's federal and state law violations and in the process committed corporate waste.

71. Because of the Compensation Committee's failures, Director Defendants Bronfman, Cline, Kaplan, Nayden and Spiegel face a substantial likelihood of liability for their breaches of fiduciary duties, making any demand upon them futile.

**Certain Director Defendants Are Not Independent**

**Defendant Tolan Lacks Independence**

72. Defendant Tolan is a founder of the Company and serves as its President and CEO. Tolan's livelihood depends on the substantial monetary and other compensation she receives form Accretive Health. Because of Tolan's employment with the Company, she is not considered an independent director.

73. Defendant Tolan owns approximately 13.1% of the Company's outstanding shares and, as a result, Tolan exerts influence and control over the Board.

74. Defendant Tolan has been named as a defendant in the related securities class action lawsuit pending against the Company. As a result, she faces substantial liability for her misconduct.

75. As a result of the foregoing, demand is futile as to Defendant Tolan.

**Defendant Cline and Bronfman Lack Independence Due to Their Entangled Business Relationship**

76. Defendant Cline is the managing partner of Accretive, LLC and Defendant Bronfman has served as the General Partner of Accretive, LLC since 2002. In 2010, Accretive LLC arranged a public offering for the Company, netting over $100 million in proceeds.

77. Due to Cline's and Bronfman's entangled business relationship, demand upon them is futile.

**Defendants Cline and Tolan Lack Independence to Their Long Standing Business Relationship**

78.     Defendants Cline and Tolan lack independence to their long-standing business relationship.  Cline and Tolan co-cofounded the Company together and have a long-standing business relationship.

79.     Due to their entangled business relationship, demand upon them is futile.

**Defendants Nayden and Wolfson Lack Independence Due to Their Entangled Business Relationship**

80.     Defendant Wolfson is the Managing Partner of Oak Hill Investment Management, L.P. ("Oak Hill Investment Management").     Oak Hill Investment Management owns approximately 8.2% of the Company's common stock.  Defendant Nayden is a managing partner of, and Defendant Wolfson is a senior advisor to, Oak Hill Capital Management, LLC, an entity associated with Oak Hill Investment Management.

81.     Due to Defendants Wolfson and Nayden's entangled business relationship, demand upon them is futile.

**<u>Additional Likelihood of Substantial Liability of the Board of Directors</u>**

82.     When the information at issue pertains to a company's core business or service, as it does here, knowledge of that information may be imputed to the entire board through inference as a matter of law.  Fairview was one of the Company's largest clients and the five-year agreement the Company entered into with Fairview for its Quality and Total Cost of Care platform was of significant import to the Company.  Thus, each of Accretive Health's Board members are charged with having knowledge of the issues described herein related to the Company's contract with Fairview and the misleading financial statements and reports.

83.     Director Defendants are also exposed to substantial potential liability in this action because of their complete failure to put in place or enforce appropriate compliance controls to assure the Company's compliance with various federal and state laws that resulted in

a devastating impact on the Company's financial condition and operations. Members of the Board of Directors have had knowledge of the wrongdoing and did nothing to prevent it, to stop it, or to prosecute the claims alleged in this action in order to seek recovery for the Company. They have thus ratified the wrongdoing alleged herein.

84. Each Director Defendant is bound by the Company's Governance Guidelines that clearly delineate the duties and responsibilities of the Board. By failing to follow these corporate guidelines, the Board caused irreparable harm to the Company.

85. All relevant information regarding the Quality and Total Costs of Care service initiative was provided to the Director Defendants. It was the duty of the Director Defendants to properly evaluate this information and provide thorough guidance and governance to the Company. Consequently, the Director Defendants are exposed to a high likelihood of substantial liability in this action, and are therefore incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action.

86. The Board Members of Accretive Health approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise these wrongs from Accretive Health shareholders or recklessly disregarded the wrongs complained of herein, and are therefore not disinterested parties. Each of the Director Defendants exhibited a systematic failure to fulfill his fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness. The Director Defendants signed off and allowed false and misleading statements to be filed with the SEC, including the Company's March 18, 2011 Form 10-K.

87. In order to bring this suit, the Board Members of Accretive Health would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand.

88. The acts complained of constitute violations of the fiduciary duties owed by Accretive Health's officers and directors and these acts are incapable of ratification.

89. Accretive Health has been, and will continue to be subjected to lawsuits for the actions described herein, including securities fraud class action lawsuits, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Accretive Health any part of the damages the Company has suffered and will continue to suffer.

90. The actions of the Directors and the relationships between and among the Individual Defendants as described above has impaired the Board's ability to validly exercise its business judgment and has rendered it incapable of reaching an independent decision as to whether to accept Plaintiff's demands.

91. Any suit by the directors of Accretive Health to remedy these wrongs would likely expose the Individual Defendants and Accretive Health to further violations of securities laws that could result in additional civil actions being filed against one or more of the Board members. In light of this, they are hopelessly conflicted in making any supposedly independent determination as to whether to sue themselves.

92. Indeed, Accretive Health has already expended and will continue to expend significant sums of money because of the illegal and improper actions described above. Such expenditures will include, but are not limited to:

a) Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts; and

b) Costs and legal fees for defending Accretive Health and certain of the Individual Defendants against private securities class action litigation arising from illegal and improper conduct alleged herein.

93. Plaintiff has not made any demand on the shareholders of Accretive Health to institute this action since demand on the shareholders would be a futile endeavor for the following reasons:

a) Accretive Health is a publicly held company with millions of shares outstanding and thousands of shareholders;

b) Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

c) Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I
## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION

94. Plaintiff incorporates by reference and realleges each allegation set forth above, as though fully set forth herein.

95. As alleged in detail herein, each of the Defendants (and particularly the Audit Committee Defendants) had a duty to ensure that Accretive Health disseminated accurate, truthful, and complete information to its shareholders.

96. Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Accretive Health shareholders materially

misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

97. As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

**COUNT II**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR
FAILING TO MAINTAIN INTERNAL CONTROLS**

98. Plaintiff incorporates by reference and realleges each allegation set forth above, as though fully set forth herein.

99. As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that when put on notice of problems with the Company's business practices and operations, appropriate action was taken to correct the misconduct and prevent its recurrence.

100. Defendants willfully ignored the obvious and pervasive problems with Accretive Health's internal controls, practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

101. As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

**COUNT III**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR
FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY**

102. Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

103.     Defendants owed and continue to owe Accretive Health fiduciary obligations. By reason of their fiduciary relationships, Defendants specifically owed and owe Accretive Health the highest obligation of good faith, fair dealing, loyalty and due care.

104.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision.

105.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Accretive Health has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

106.     Because of the misconduct alleged herein, Defendants are liable to the Company.

107.     Plaintiff, on behalf of Accretive Health, has no adequate remedy at law.

## COUNT IV
## AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

108.     Plaintiff incorporates by reference and realleges each allegation set forth above, as though fully set forth herein.

109.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Accretive Health.

110.     Plaintiff, as a shareholder and representative of Accretive Health, seek restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT V
## AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL

111.     Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

112.    Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Accretive Health, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing Accretive Health to misrepresent material facts regarding its financial position and business prospects.

113.    As a direct and proximate result of Defendants' abuse of control, Accretive Health has sustained significant damages.

114.    Because of the misconduct alleged herein, Defendants are liable to the Company.

115.    Plaintiff, on behalf of Accretive Health, has no adequate remedy at law.

## COUNT VI
## AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT

116.    Plaintiff incorporates by reference and realleges each allegation set forth above, as though fully set forth herein.

117.    Defendants had a duty to Accretive Health and its shareholders to prudently supervise, manage, and control the operations and disclosure controls of Accretive Health.

118.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned, and abdicated their responsibilities and duties with regard to prudently managing the businesses of Accretive Health in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence, and candor in the management and administration of Accretive Health's affairs and in the use and preservation of Accretive Health's assets.

119.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, and Defendants caused Accretive Health to engage in the allegations complained of herein which they knew had

an unreasonable risk of damage to Accretive Health, thus breaching their duties to the Company. As a result, Defendants grossly mismanaged Accretive Health.

## COUNT VII
## AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS

120.     Plaintiff incorporates by reference and realleges each allegation contained above, as though fully set forth herein.

121.     As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused Accretive Health to incur (and Accretive Health may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

122.     Because of this waste of corporate assets, Defendants are liable to the Company.

123.     Plaintiff, on behalf of Accretive Health, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Accretive Health to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein;

C.     Awarding to Accretive Health restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: July **23**, 2012

Respectfully submitted,

_____
James T. Crotty
**JAMES T. CROTTY & ASSOCIATES**
3S126 Park Blvd.
Glen Ellyn, IL 60137
Telephone: (312) 623-1599
Facsimile: (312) 553-1586
jamestcrotty@aol.com

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

*Attorneys for Plaintiff*

## VERIFICATION

I, Robert Haith, declare that I have reviewed the Complaint ("Complaint") prepared on behalf of Accretive Health, Inc., and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder and have been a continuous holder of Accretive Health common stock during the relevant time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

19 July 2012
Date


Robert Haith

SUBSCRIBED and SWORN
TO BEFORE ME THIS 19
DAY OF JULY, 2012

NOTARY PUBLIC STATE OF FL!

MY COMMISSION EXPIRES:

9/26/12

CANDICE N. RUSSELL
Notary Public - State of Florida
My Comm. Expires Sep 26, 2012
Commission # DD 826193
Bonded Through National Notary Assn.

COURT OF COOK COUNTY, ILLINOIS
CHANCERY DIVISION

ROBERT HAITH, derivatively on behalf of
ACCRETIVE HEALTH, INC.

            Plaintiff,

         vs.

EDGAR M. BRONFMAN, JR., J. MICHAEL
CLINE, STEVEN N. KAPLAN, STANLEY N.
LOGAN, DENIS J. NAYDEN, ARTHUR H.
SPIEGEL, III, MARY A. TOLAN, JOHN T.
STATON AND MARK A. WOLFSON,

            Defendants,

    And

ACCRETIVE HEALTH, INC.,

            Nominal Defendant.

Civil Action NO.

CIRCUIT

### AFFIDAVIT OF DAMAGES
### (Supreme Court Rule 222)

The undersigned, ROBERT HAITH, being first duly sworn upon oath, deposes and states that he is a party to the above entitled cause of action seeking money damages and states that this cause of action does exceed $50,000.00.

_____
Robert Haith

Subscribed and Sworn to
before me this 19 day of
JULY, 2012.

_____
Notary Public

My Commission Expires:

9/26/12

CANDICE N. RUSSELL
Notary Public - State of Florida
My Comm. Expires Sep 26, 2012
Commission # DD 826193
Bonded Through National Notary Assn.